The opinion of the Court was' delivered by
Poetó, J.
John P. Michel died in 1854, in East Baton Kouge, leaving no ascendants or descendants, and leaving a considerable estate in community with his surviving wife, Josephine Michel, to whom lie bequeathed his entire share of the movables belonging to the community, also bequeathing to her the usufruct of his share of the immovable property, without security on her part.
His will, which was rather ambiguous, in so far as it gave to special legatees such portions of his share of the immovables as would hot have been disposed of by his wife, at the time of her death, was fully interpreted by this Court in a decision reported in 10 Annual, p. 352, in which her rights as legatee of all the movables, and her rights as usufructuary of -the decedent’s share of the immovables were sx>eeially recognized, with the power and authority to sell at public auction at her option, and on her own terms, all the property subject to her usufruct, and to exercise her said rights on the proceeds of the sale thus made.
Such sale was made in August, 1855, resulting in Mrs. Michel’s purchase of a large portion of the immovable property of the succession and community. After the sale, she retained the ownership and possession of the property which she had bought, and received for her me the proceeds of so much of the property as was purchased by strangers.
In October, 1871, Mrs. Michel made a. donation inter vivos to Mrs. Adéle Bory, an intimate friend of hers, of a valuable piece of property, situated in the city of Baton Kouge, valued at $8,000, and forming part of her purchase of August, 1855, which donation was subject to an annual rent of $600 during the remainder of the donor’s life, to be paid to her by the donee in equal monthly instalments.
Between December, 1870, and December, 1871, Mrs. Michel executed several promissory notes, of various sums, ariiounting together to $8,180, payable to the order of Mrs. Bory, who negotiated the saíne, by endorsement, to two or three different persons, and in March, 1873, these notes, being then held by H. K. Knox, Mrs. Bory executed in his favor, a mortgage on the immovable property donated to her by Mrs. Michel, in order to secure the payment of said notes.
*401 Mrs. Micliel died in 1872, and at tlie settlement of her succession in 1873, N. K. Knox, received from the administrator the sum of $1,900, on account of Mrs. Michel’s notes, held by him as stated above.
In September, 1874, the property donated to Mrs. Bory was sold for taxes, assessed in her name, and adjudicated to N. K. Knox, one of the defendants herein.
After reciting in substance the foregoing facts, which are shown by the record, plaintiffs, as heirs and legatees of John P. Michel, and intervenors as heirs of Mrs. Michel, seek, by this suit, to obtain a judgment, decreeing the nullity of the donation to Mrs. Bory, and of the tax sale to N. K. Knox, so as to revert the title of the property to the succession and community of John P. Michel and wife, and decreeing the nullity, for want of consideration, of the notes executed by Mrs. Michel in favor of Mrs. Bory, and also condemning Knox to pay and restore to them the sum of $1,900, paid to him on account of said notes, by the administrator of Mrs. Michel’s succession.
The defendants pleaded the general issue, and averred specially the validity of all the transactions alleged by plaintiffs to be fraudulent, null and void, averred the good faith of Knox in his purchase, and concluded with a prayer in case of a decree annulling the donation and the sale, for reimbursement of the taxes paid, and improvements placed by Knox and Mrs. Bory on the property. They also urged the plea of res jiulicafa against intervenors, as heirs of Mrs. Michel, based on the judgment homologating the final account of administration of Mrs. Michel’s succession, to which they were parties as defendants and as opponents.
Plaintiffs and intervenors are appellants from a judgment of the District Court rejecting all their demands.
As the title of Mrs. Bory, under the donation, underlies the controversy on the first branch of the case, we shall first direct our attention to plaintiffs’ attack on that transaction.
The nullity which plaintiffs charge is on the theory that at the time of the donation the naked ownership of Michel’s share of that piece of property was in his heirs and legatees, and that under the will, Mrs. Michel, being only the usufructuary of her husband’s share, she could not dispose of the property by gratuitous title.
The fallacy of this position, which has caused this complicated litigation, and is the main prop of plaintiffs’ entire superstructure, can be easily demonstrated, both on principle and authority.
Under the •will, as interpreted by the opinion and decree of this Court, Mi's. Michel had the option to exercise her right of usufruct on her husband’s immovables, directly, or by provoking a sale of the same at public auction, to have her usufruct established on .the proceeds of *402 the sale. If she elected to exercise her usufruct on the property itself, she would have been subjected to the rules of the perfect usufruct, under which she could not acquire title to the property, which she was legally bound to restore to the owners at the termination of the irsufruct. If, on the other hand, she chose, as she did, to have the property sold, to enjoy the usufruct of the proceeds of the sale, she. was governed by the rules of the imperfect usufruct, under which she became the owner of the funds, subject to the obligation of accounting for the same to the heirs and legatees of her husband, at the expiration of the usufruct. C. C. 535, 536, 549; Succession of Hayes, 33 A. 1143.
Up to the sale of August, 1855, she was owner, in her own .right, of one-half of the property, and usufructuary of the other half with the naked ownership in the heirs and legatees of the decedent.
By the sheriff’s adjudication to her on August 4, 1855, she acquired a title under a purchase, “ as valid and binding as though made by any disinterested third party,” C. C. 1146; and by operation of law, the purchase price was turned over to her, with her usufruct attaching to one-lialf of the same, and quoad that property, she became at the termination of tlie usufruct, indebted to the heirs and legatees of her husband for one-half of the proceeds of the sale. She thus acquired as complete and perfect a title to this property, as that which third parties acquired to the property purchased by them at that auction sale. As such owner, she was impeded by no law from disposing of her lawful property by sale or donation, and hence, her donation to Mrs. Bory transferred an untrammelled title to the latter.
But, as Mrs. Bory’s husband was absent from the State, she obtained, the authorization of tlie Parish Judge for the purpose of legally accepting the donation, and it is contended that the property, being valued at $8,000, the Parish Judge was incompetent for want of jurisdiction beyond $500, to grant the order, and that, therefore, the wife being authorized by neither husband nor Judge, the donation was a nullity. This objection is predicated on the. requirements of Arts. 126, 127 and 128, of the Civil Code, regulating loans made by married women, and the authorization in this case must be regulated by Art. 132, in which no reference is made to the amount involved, and we hold that the Parish Judge was competent to authorize a married woman to accept a donation without reference to the value of the property donated. But as this question is stripped of practical importance under our present judiciary system, we shall not elaborate the reasons which led us to that conclusion. For be that as it may, we are clear that plaintiffs have no authority in law to institute this inquiry, or to urge this nullity.
Art. 134 of the Civil Code provides, that “proceedings to' annul the acts of the wife, for want of authority, can be instituted only hy the *403 husband or wife or by their heirs.” This Article is too clear and unambiguous to need any judicial interpretation of its meaning and import.
Marcadé, (Yol. I. p. 567) commenting upon the corresponding Article of the Najxileon Code, of which our Article is a literal translation, uses the following terse and decisive language : “ L’acte n’est qiv’cminilable et l’annulation n’en peut étre demandée que par la femime, le mari ou leurs représentants; elle lie pourrait pas l’étre par ceux ou les représentants de ceux qui ont contracté'avec la femme.”
Hence, we conclude that the act being only voidable, the nullity is only relative, and none but the parties specially authorized by law can seek to have the nullity declared, and a fortiori are these plaintiffs representing rights under the donor,' silenced in the matter. Roberts vs. Wilkinson, 5 A. 370; Lafitte et al. vs. Delogny et al., 33 A. 663, and authorities therein quoted.
Hence, that plea falls.
Thus, it is clear that by the sale of August, 1855, the succession' of Pierre Michel having'been divested of all title to the property, and Mrs. Michel having voluntarily parted with her title by the donatiou of October, 1871, plaintiffs, as heirs and legatees of Michel, and as creditors of Mrs. Michel, for the account of her imperfect usufruct, and the intervenors, as heir's of Mrs. Michel, whose distinct rights in these various capacities have all accrued subsequently to the act of donation, had no more title or interest to the property in 1874, when it was sold for taxes and brought in by the defendant, Knox.
. Hence, it follows that the validity or nullity of that sale is of no concern to them, and, therefore, they have no right to judicially assert the nullity of that sale, which cannot be disturbed in this suit. They cannot champion the rights of Mrs. Bory, the expropriated owner, who does not complain.
As to the nullity of the notes, the evidence shows that Knox acquired them in good faith, and for consideration. The burden of proving-want of consideration was, therefore, on plaintiffs, and this they have utterly failed to do. Smith’s Mer. Law, p. 257; Ogden vs. Marchand; 29 A. 61; 38 A. 94; 21 A. 200.
The claim of plaintiffs for restitution of the sum of $1,900, paid to Knox by the administrator of Mrs. Michel’s succession, is barred by the prescription of three years, under the provisions of Art. 1138, C. C., which says: “The action on the part of the creditors who have not been paid, against the creditors who have been, is prescribed by three years, counting from the date of the order or judgment, in virtue of which the payment has been made.” The judgment was rendered in 1873, and this suit was filed in 1878.
*404 The record shows that the intervenors were parties as heirs, by citation, and as opponents, in the matter of the final account of administration, homologated by the judgment of May, 1873, by which they are bound, and they are thus debarred from the right of contesting the validity of the payment made to Knox.
Having considered and answered all the points suggested by plaintiffs in their pleadings in this case, wo think that there is no error in the conclusions reached by the District Judge.
The judgment' appealed from is, therefore, affirmed at appellants’ costs.